Nos. 24-6256, 24-6274

IN THE
# United States Court of Appeals
# for the Ninth Circuit

EPIC GAMES, INC.,
*Plaintiff-Appellee*,

v.

GOOGLE LLC,
*Defendant-Appellant*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA
The Honorable James Donato, District Court No. 3:20-cv-5671-JD

## UNOPPOSED MOTION OF THE UNITED STATES OF AMERICA AND THE FEDERAL TRADE COMMISSION FOR LEAVE TO FILE AMICUS BRIEF IN SUPPORT OF NEITHER PARTY ON GOOGLE'S EMERGENCY MOTION FOR PARTIAL STAY

ANISHA S. DASGUPTA
GENERAL COUNSEL
FEDERAL TRADE COMMISSION
600 Pennsylvania Ave., N.W.
Washington, DC 20580
(202) 326-2115

JONATHAN S. KANTER
  *Assistant Attorney General*
DOHA G. MEKKI
  *Principal Deputy Assistant
  Attorney General*
JOHN W. ELIAS
  *Deputy Assistant Attorney
  General*
DAVID G.B. LAWRENCE
  *Policy Director*
DANIEL E. HAAR
NICKOLAI G. LEVIN
PATRICK M. KUHLMANN
  *Attorneys*
U.S. DEPARTMENT OF JUSTICE
ANTITRUST DIVISION
950 Pennsylvania Ave., N.W. #3224
Washington, D.C. 20530-0001

*Counsel for the United States and the Federal Trade Commission*

Pursuant to Fed. R. App. P. 29(a) and 28 U.S.C. § 517,[1] the United States and the Federal Trade Commission (together, the Government) respectfully request leave to file the attached Brief of the United States of America and the Federal Trade Commission as Amici Curiae in Support of Neither Party on Google's Emergency Motion for Partial Stay. Plaintiff-appellee Epic Games, Inc. consents to the filing of the brief, and defendant-appellant Google LLC does not oppose this motion.

The Government enforces the federal antitrust laws and has a strong interest in their correct application. The Government has a particularly strong interest in ensuring that courts issue effective remedies for antitrust violations, and the Federal Trade Commission submitted an amicus brief on that issue in the district court. Dkt. 686-1. In addition, the United States has ongoing civil litigation against Google. *United States v. Google LLC*, 20-cv-3010-APM (D.D.C.); *United States v. Google LLC*, No. 1:23-cv-00108-LMB-JFA (E.D. Va.).

The Government's brief would aid the Court in its consideration of

---

[1] Section 517 authorizes the Department of Justice "to attend to the interests of the United States in a suit pending in a court of the United States." 28 U.S.C. § 517.

1

issues of federal antitrust law raised in Google's motion for a stay pending appeal. This amicus brief discusses the standards applicable to remedying antitrust violations and addresses several misstatements of law in Google's motion for a stay pending appeal.

Accordingly, the Government respectfully requests leave to file the attached brief.

Respectfully submitted,

/s/ Patrick M. Kuhlmann

ANISHA S. DASGUPTA
GENERAL COUNSEL
FEDERAL TRADE COMMISSION
600 Pennsylvania Ave., N.W.
Washington, DC 20580
(202) 326-2115
adasgupta@ftc.gov

JONATHAN S. KANTER
  *Assistant Attorney General*
DOHA G. MEKKI
  *Principal Deputy Assistant
  Attorney General*
JOHN W. ELIAS
  *Deputy Assistant Attorney
  General*
DAVID G.B. LAWRENCE
  *Policy Director*
DANIEL E. HAAR
NICKOLAI G. LEVIN
PATRICK M. KUHLMANN
  *Attorneys*
U.S. DEPARTMENT OF JUSTICE
ANTITRUST DIVISION
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530
(202) 305-4639
patrick.kuhlmann@usdoj.gov

October 25, 2024

2

## CERTIFICATE OF COMPLIANCE

This motion complies with the word limitations of Federal Rule of Appellate Procedure 27(d)(2)(A) and Circuit Rule 27-1 because it contains 249 words. The motion complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface with 14-point New Century Schoolbook font.

October 25, 2024

s/ Patrick M. Kuhlmann
*Attorney for the*
*United States of America*

## CERTIFICATE OF SERVICE

I, Patrick M. Kuhlmann, hereby certify that on October 25, 2024, I electronically filed the foregoing Unopposed Motion of the United States of America and the Federal Trade Commission for Leave to File Amicus Brief in Support of Neither Party on Google's Emergency Motion for Partial Stay by using the ACMS electronic filing system.

I certify that all participants in this case are registered ACMS users and that service will be accomplished by the ACMS system.


October 25, 2024                          s/ Patrick M. Kuhlmann
                                          *Attorney for the*
                                          *United States of America*

Nos. 24-6256, 24-6274

IN THE
United States Court of Appeals
for the Ninth Circuit

EPIC GAMES, INC.,
*Plaintiff-Appellee*,

v.

GOOGLE LLC,
*Defendant-Appellant*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA
The Honorable James Donato, District Court No. 3:20-cv-5671-JD

BRIEF OF THE UNITED STATES OF AMERICA AND THE FEDERAL TRADE
COMMISSION AS AMICI CURIAE IN SUPPORT OF NEITHER PARTY ON
GOOGLE'S EMERGENCY MOTION FOR PARTIAL STAY

ANISHA S. DASGUPTA
GENERAL COUNSEL
FEDERAL TRADE COMMISSION
600 Pennsylvania Ave., N.W.
Washington, DC 20580
(202) 326-2115

JONATHAN S. KANTER
  *Assistant Attorney General*
DOHA G. MEKKI
  *Principal Deputy Assistant
  Attorney General*
JOHN W. ELIAS
  *Deputy Assistant Attorney
  General*
DAVID G.B. LAWRENCE
  *Policy Director*
DANIEL E. HAAR
NICKOLAI G. LEVIN
PATRICK M. KUHLMANN
  *Attorneys*
U.S. DEPARTMENT OF JUSTICE
ANTITRUST DIVISION
950 Pennsylvania Ave., N.W. #3224
Washington, D.C. 20530-0001
(202) 305-4639

*Counsel for the United States and the Federal Trade Commission*

# TABLE OF CONTENTS

TABLE OF CONTENTS……………………………………………..………i

TABLE OF AUTHORITIES ......................................................................ii

INTERESTS OF AMICI ............................................................................ 1

STATEMENT.............................................................................................. 2

ARGUMENT ............................................................................................... 3

   I.   Courts Have Broad Authority To Grant Injunctive Relief To Prevent and Restrain Monopolization and Other Antitrust Violations……………....................................................................... 3

  II.  The Court Should Not Adopt Google's Misstatements of Law ........ 6

     A.   Antitrust Remedies Are Not Subject to the Liability Standard for Refusal-to-Deal-with-Rivals Claims ....................................... 6

     B.   It Is Appropriate for Courts To Account for Network Effects in Crafting Remedies……………….. ............................................... 10

     C.   Antitrust Remedies Can Include Reasonable, Cost-Based Pricing...……………………………………………………… 12

     D.   There Can Be Different Relevant Markets in Different Cases………….................................................................... 13

CONCLUSION ....................................................................................... 16

CERTIFICATE OF COMPLIANCE ....................................................... 17

CERTIFICATE OF SERVICE................................................................. 18

i

# TABLE OF AUTHORITIES

**Cases**                                                      **Page(s)**

*Brown Shoe Co. v. United States*,
370 U.S. 294 (1962) ...........................................................14

*Epic Games, Inc. v. Apple, Inc.*,
67 F.4th 946 (9th Cir. 2023) ..............................................13

*Ford Motor Co. v. United States*,
405 U.S. 562 (1972) ..................................................... passim

*FTC v. National Lead Co.*,
352 U.S. 419 (1957) ..............................................................9

*Image Technical Services v. Eastman Kodak Co.*,
125 F.3d 1195 (9th Cir. 1997) ...........................................13

*In re Multidistrict Vehicle Air Pollution*,
538 F.2d 231 (9th Cir. 1976) ...............................................4

*International Salt Co. v. United States*,
332 U.S. 392 (1947) .................................................. 5, 10, 12

*Klein v. Facebook, Inc.*,
580 F. Supp. 3d 743 (N.D. Cal. 2022) ...............................11

*Lair v. Bullock*,
798 F.3d 736 (9th Cir. 2015) ..............................................12

*Massachusetts v. Microsoft Corp.*,
373 F.3d 1199 (D.C. Cir. 2004) ...............................8, 10, 11

*National Society of Professional Engineers v. United States*,
435 U.S. 679 (1978) ......................................................... 5, 9

*NCAA v. Alston,*
    594 U.S. 69 (2021) ........................................................................9, 10, 11

*NCAA v. Board of Regents,*
    468 U.S. 85 (1984) ......................................................................................3

*Northern Pacific Railway Co. v. United States,*
    356 U.S. 1 (1958) .........................................................................................3

*Optronic Technologies, Inc. v. Ningbo Sunny Electronics Co., Ltd.,*
    20 F.4th 466 (9th Cir. 2021) ........................................................4, 5, 7, 8

*Optronic Technologies, Inc. v. Ningbo Sunny Electronics Co., Ltd.,*
    No. 5:16-cv-06370-EJD, 2020 WL 1812257 (N.D. Cal. Apr. 9, 2020) ...7

*Sullivan v. NFL,*
    34 F.3d 1091 (1st Cir. 1994) ...................................................................15

*United States v. Bausch & Lomb Optical Co.,*
    321 U.S. 707 (1944) ....................................................................................9

*United States v. Continental Can Co.,*
    378 U.S. 441 (1964) ..................................................................................14

*United States v. Glaxo Group Ltd.,*
    410 U.S. 52 (1973) .................................................................................6, 13

*United States v. Microsoft Corp.,*
    253 F.3d 34 (D.C. Cir. 2001) .................................................................4, 5

*United States v. Pabst Brewing Co.,*
    384 U.S. 546 (1966) ..................................................................................12

*United States v. Paradise,*
    480 U.S. 149 (1987) ....................................................................................8

iii

*United States v. Phillipsburg Bank & Trust Co.*,
 399 U.S. 350 (1970) ................................................................... 14

*US Airways, Inc. v. Sabre Holdings Corp.*,
 938 F.3d 43 (2d Cir. 2019) ....................................................... 12

*Verizon Communications Inc. v. Law Office of Curtis V. Trinko, LLP*,
 540 U.S. 398 (2004) ................................................... 6, 7, 8, 9

*Zenith Radio Corp. v. Hazeltine  Inc.*,
 395 U.S. 100 (1969) ............................................................ 3, 8

**Statutes**

15 U.S.C. § 1 ............................................................................. 2

15 U.S.C. § 2 .............................................................................. 2

28 U.S.C. § 517 .......................................................................... 2

**Rules**

Federal Rule of Appellate Procedure 29(a) ............................... 2

**Other Authorities**

Department of Justice & Federal Trade Commission, *Merger Guidelines*
 § 4.3 (2023) ........................................................................... 14

iv

## INTERESTS OF AMICI

The United States and the Federal Trade Commission enforce the federal antitrust laws and have a strong interest in their correct application. The government has a particularly strong interest in ensuring that courts issue effective remedies for antitrust violations, and the Commission submitted an amicus brief on that issue in the district court. Dkt. 686-1.[1] In addition, the United States has ongoing civil litigation against Google. The District Court for the District of Columbia is considering appropriate remedies for Google's maintenance of monopolies in general search services and general search text advertising, *United States v. Google LLC*, 20-cv-3010-APM (D.D.C.), and the District Court for the Eastern District of Virginia recently held a trial on charges that Google maintains monopolies in three distinct digital-advertising-technology markets (among other claims), *United States v. Google LLC*, No. 1:23-cv-00108-LMB-JFA (E.D. Va.).

This amicus brief addresses the standards applicable to remedying monopolization and other antitrust violations and identifies several

---

[1] "Dkt." refers to *Epic Games, Inc. v. Google LLC*, 3:20-cv-05671-JD (N.D. Cal.).

1

misstatements of law in Google's motion for a stay pending appeal. It is filed under Federal Rule of Appellate Procedure 29(a) and 28 U.S.C. § 517.

## STATEMENT

Following a 15-day trial, a jury found that Google violated Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1-2, by unreasonably restraining trade in and monopolizing the markets for the distribution of Android apps and for Android in-app payment processing for digital goods and services transactions. After "extensive post-verdict hearings," the district court granted a permanent injunction. Dkt. 701 at 2 (Order); Dkt. 702 (Injunction).

The district court enjoined Google from engaging in several practices for three years. Injunction ¶¶ 4-10. And for three years, the injunction required Google to "permit third-party Android app stores to access the Google Play Store's catalog of apps so that they may offer the Play Store apps to users" (the catalog-access provision), *id.* ¶ 11, and it provided that "Google may not prohibit the distribution of third-party Android app distribution platforms or stores through the Google Play Store" (the app-store-distribution provision), *id.* ¶ 12. However, Google

may take "reasonable measures" to ensure that third-party app stores are safe, secure, and lawful, and may charge "a reasonable fee for these services, which must be based on Google's actual costs." *Id*. The injunction establishes a Technical Committee to review certain injunction-related disputes. *Id.* ¶¶ 12-13. The court "narrowly tailored" these provisions "to remediate the anticompetitive 'consequences' of Google's illegal conduct" while avoiding "excessive judicial oversight." Order 8-9, 11.

## ARGUMENT

### I. Courts Have Broad Authority To Grant Injunctive Relief To Prevent and Restrain Monopolization and Other Antitrust Violations

"The Sherman Act was designed to be a comprehensive charter of economic liberty aimed at preserving free and unfettered competition as the rule of trade." *NCAA v. Bd. of Regents*, 468 U.S. 85, 109 n.27 (1984) (quoting *N. Pac. Ry. Co. v. United States*, 356 U.S. 1, 4 (1958)). Congress thus authorized injunctions in private antitrust cases not "merely to provide private relief" but to "serve as well the high purpose of enforcing the antitrust laws." *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 130-31 (1969).

3

Remedies for Section 2 violations therefore must do more than end the offending conduct while leaving competition wanting. *See Optronic Techs., Inc. v. Ningbo Sunny Elec. Co., Ltd.*, 20 F.4th 466, 486 (9th Cir. 2021) ("antitrust relief must restore competition" (citing *Ford Motor Co. v. United States*, 405 U.S. 562, 573 (1972))). Rather, antitrust remedies "should unfetter a market from anticompetitive conduct *and* pry open to competition a market that has been closed by defendants' illegal restraints." *Ford*, 405 U.S. at 577-78 (emphasis added). Thus, "[i]f the jury finds that monopolization or attempted monopolization has occurred, the available injunctive relief is broad, including to 'terminate the illegal monopoly, deny to the defendant the fruits of its statutory violation, and ensure that there remain no practices likely to result in monopolization in the future.'" *Optronic Techs.*, 20 F.4th at 486 (quoting *United States v. Microsoft Corp.*, 253 F.3d 34, 103 (D.C. Cir. 2001)); *see In re Multidistrict Vehicle Air Pollution*, 538 F.2d 231, 234 (9th Cir. 1976) ("end" illegal conduct, "depriv[e] violators of [its] benefits," and "restor[e] competition").

District courts possess broad remedial authority to meet these distinct ends. The "District Court is clothed with 'large discretion' to fit

the decree to the special needs of the individual case." *Ford*, 405 U.S. at 573 (quoting *Int'l Salt Co. v. United States*, 332 U.S. 392, 401 (1947)). An injunction need not be limited to the specific means or methods the defendant used to maintain its monopoly. *See Optronic Techs.*, 20 F.4th at 486. "The reviewing court only asks 'if the relief [is] a reasonable method of eliminating the consequences of the illegal conduct.'" *Id.* (quoting *Nat'l Soc'y of Prof'l Eng'rs v. United States*, 435 U.S. 679, 698 (1978)).

In crafting an effective remedy for monopolization, the district court can "consider the particular characteristics of digital markets, which can allow monopolists that achieved dominance through exclusionary conduct to perpetuate entry barriers and maintain monopoly power long after that conduct has stopped." FTC Amicus Brief, Dkt. 686-1 at 8. "Network effects" and "data feedback loops" can amplify the effects of anticompetitive conduct in these markets, entrenching monopoly power. *Id.* at 8-9; *see Microsoft*, 253 F.3d at 55 (network effects create a "chicken-and-egg" situation in which the dominant platform becomes difficult to dislodge). Accordingly, remedies in such markets will often need to do

more than enjoin the specific exclusionary conduct to restore competitive conditions.

## II. The Court Should Not Adopt Google's Misstatements of Law

A jury found that Google illegally monopolized two markets and committed other antitrust violations. In asking the Court to delay remedies for its ongoing anticompetitive conduct, Google misstates the law on antitrust remedies and market definition in several important respects.

### A. Antitrust Remedies Are Not Subject to the Liability Standard for Refusal-to-Deal-with-Rivals Claims

Google claims that *Verizon Communications Inc. v. Law Office of Curtis V. Trinko, LLP*, 540 U.S. 398 (2004), bars the catalog-access and app-store-distribution provisions because Google was not held liable for a refusal to deal with rivals. Mot. 16-19. But *Trinko* addresses antitrust *liability*, not *remedies*. Google identifies no authority holding that antitrust remedies are subject to the Section 2 liability standard for refusals to deal with rivals—because it cannot. To the contrary, courts often impose affirmative duties to deal as remedies for antitrust violations. *See, e.g.*, *United States v. Glaxo Grp. Ltd.*, 410 U.S. 52, 62

6

(1973) (requiring mandatory sales of antibiotic compound on nondiscriminatory terms and mandatory licensing of patents to competing manufacturers at reasonable-royalty rates); *Ford*, 405 U.S. at 577 (Ford had to purchase half its spark plugs from divested company for five years).

Indeed, *Optronic Technologies*, on which Google relies, Mot. 17, rejected the precise argument Google now makes. There, a refusal-to-deal-with-rivals claim was dismissed but a jury found the defendant committed other antitrust violations. 20 F.4th at 475, 486. At the remedies stage and on appeal, the defendant argued that *Trinko* prohibited the court from ordering the defendant to supply the plaintiff and another party on non-discriminatory terms. *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co., Ltd.*, No. 5:16-cv-06370-EJD, 2020 WL 1812257, at *6 (N.D. Cal. Apr. 9, 2020); Appellant's Response Brief at 39, *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co., Ltd.*, 20 F.4th 466 (9th Cir. 2021), *available at* 2021 WL 624491. The district court rejected the argument, explaining that *Trinko* "did not address whether and to what extent a mandatory injunction may be appropriate to remedy an actual violation of law." *Optronic Techs.*, 2020 WL 1812257, at *6. This Court affirmed,

7

noting that "the district court can order conduct to 'avoid a recurrence of the [antitrust] violation and to eliminate its consequences'" and it was a "reasonable method of remedying the harm" from the violations and preventing their recurrence. *Optronic Techs.*, 20 F.4th at 486. Google provides this Court with no basis to deviate from this binding precedent.

Similarly, *Massachusetts v. Microsoft Corp.*, 373 F.3d 1199, 1215 (D.C. Cir. 2004)—decided after *Trinko*—upheld an injunction requiring Microsoft to disclose APIs and communications protocols to rivals even though the "non-disclosure of this proprietary information had played no role in [the court's] holding Microsoft violated the antitrust laws." Thus, despite the lack of an underlying refusal-to-deal-with-rivals violation, the court concluded that the provisions "'represent[ed] a reasonable method' of facilitating the entry of competitors into a market from which Microsoft's unlawful conduct previously excluded them." *Id.* at 1218.

Improperly collapsing liability and remedies standards, Google ignores that a "law violator" does not "stand in the same position as an innocent party." *United States v. Paradise*, 480 U.S. 149, 193 n.3 (1987) (Stevens, J., concurring). Antitrust remedies often sweep more broadly than simply enjoining the exact conduct found unlawful. *See, e.g.*, *Zenith*,

8

395 U.S. at 132 (reinstating injunction that "more broadly barred [defendant] from conspiring with others" to limit entry in "any other foreign market" even though the violation focused on Canada); *FTC v. Nat'l Lead Co.*, 352 U.S. 419, 430 (1957) (court may restrict conduct, which might otherwise be lawful, in order to "preclude the revival of the illegal practices"); *United States v. Bausch & Lomb Optical Co.*, 321 U.S. 707, 724 (1944) (agreements "otherwise valid, should be cancelled, along with the invalid arrangements, in order that the ground may be cleansed effectually from the vice of the former illegality"). That an injunction impinges upon "rights that would otherwise be . . . protected" does "not prevent [the court] from remedying the antitrust violations." *Prof'l Eng'rs*, 435 U.S. at 697-98. Put simply, there are consequences for breaking the antitrust laws.

Google's reliance on *NCAA v. Alston*, 594 U.S. 69 (2021), Mot. 17, is misplaced. Citing *Trinko*, *Alston* cautions that courts "must have a healthy respect for the practical limitations of judicial administration." 594 U.S. at 102. *Alston* said nothing about when remedies granting rivals some type of access are permissible (which was not at issue), much less

suggested that such remedies are limited to cases involving unlawful refusals to deal with rivals.

The district court expressly heeded *Alston*. Order 8. The court issued a "plainly worded" injunction and established a Technical Committee to resolve disputed issues in the first instance. *Id.* at 16. Google calls the committee "unprecedented," Mot. 16, but there was a similar committee in *Microsoft*, and the D.C. Circuit found it "clearly strengthened" the decree, 373 F.3d at 1245.

## B. It Is Appropriate for Courts To Account for Network Effects in Crafting Remedies

Google argues that "[a]ntitrust law cannot deprive a company of 'network effects' . . . gained through legitimate competition" without proof of the specific network effects "attributable to anticompetitive conduct." Mot. 18. But Google cites no case requiring a plaintiff to prove the specific portion of the network effects attributable to the misconduct in order to account for those network effects in fashioning a remedy to restore competition to monopolized markets.

Network effects are the kind of market reality that courts not only can, but should, account for in crafting remedies. Courts "are invested with large discretion to model their judgments to fit the exigencies of the

10

particular case." *Int'l Salt*, 332 U.S. at 401. Moreover, antitrust cases require a "careful analysis of market realities," *Alston*, 594 U.S. at 93, and those market realities remain relevant to the determination and oversight of remedies, *id*. at 102. Network effects can "create high barriers to entry," *Klein v. Facebook, Inc.*, 580 F. Supp. 3d 743, 780 (N.D. Cal. 2022), and overcoming them in monopolized markets is a critical goal of designing a remedy that reopens a market to competition, *see Mass.*, 373 F.3d at 1218, 1222 (required disclosure of APIs and communications protocols, to allow interoperation with defendant's dominant platform, "represents a reasonable method of facilitating the entry of competitors into a market from which [defendant's] unlawful conduct previously excluded them" (quotation marks omitted)); *cf. Ford*, 405 U.S. at 578 ("lower[ing] a major barrier to entry" is an appropriate goal of antitrust relief).

The district court explained that the existence of, and access to, network effects are important factors in enabling competition in the monopolized markets, and found that "Google unfairly enhanced its network effects" through its anticompetitive conduct. Order 11. Accordingly, the court appropriately considered these network effects

11

in crafting provisions to "bridge the moat" they fortified and "pry open to competition" the markets Google monopolized. *Id.* at 5, 11 (quoting *Ford*, 405 U.S. at 577).

Moreover, Google's request for this Court to disturb the district court's finding that overcoming network effects will be necessary to effectuate relief, Order 10-11, disregards that factual findings are reviewed only for "clear error," *Lair v. Bullock*, 798 F.3d 736, 745 (9th Cir. 2015). The Supreme Court has cautioned that "[t]he framing of decrees should take place in the District rather than in Appellate Courts." *Int'l Salt*, 332 U.S. at 400. Yet Google never explains why the fact of network effects should be treated differently than other market realities considered in crafting a remedy, and its proposed causation standard for network-effect-related remedies would undermine the imposition of effective relief for monopolization.

## C. Antitrust Remedies Can Include Reasonable, Cost-Based Pricing

Google complains the district court limited it to "reasonable fees" based on "actual costs" for security services related to the app-store-distribution provision. Mot. 19. But courts can craft remedies that require defendants to charge reasonable fees where such a requirement

12

helps restore competition. "Mandatory selling on specified terms and compulsory patent licensing at reasonable charges are recognized antitrust remedies." *Glaxo*, 410 U.S. at 64. Such a remedy can be "necessary to assure that the relief will be effective." *Id.* Here, that was the case, as the security services are not commercially available, and prohibitively expensive fees would undermine the decree. *Cf. Image Tech. Servs. v. Eastman Kodak Co.*, 125 F.3d 1195, 1225 (9th Cir. 1997) (striking a provision requiring the defendant to sell patented parts at reasonable prices because a nondiscrimination requirement was "less restrictive means" of preventing future harm).

### D. There Can Be Different Relevant Markets in Different Cases

While this brief focuses on the injunction, that does not imply agreement with Google's liability arguments. In particular, Google errs in suggesting that issue preclusion bars the two relevant markets found here because a broader market was defined in *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 973 (9th Cir. 2023). Mot. 10-12. Google's argument rests on the incorrect assumption that there is only one true relevant market around any particular set of products, which defies longstanding market-definition precedent.

13

The Supreme Court has long recognized that, "within [a] broad market, well-defined submarkets may exist which, in themselves, constitute product markets for antitrust purposes." *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962). Accordingly, the Court has repeatedly rejected arguments that would require a singular understanding of the relevant market. *See United States v. Cont'l Can Co.*, 378 U.S. 441, 457-58 (1964) (a broader product market "does not necessarily negative the existence of submarkets"); *United States v. Pabst Brewing Co.*, 384 U.S. 546, 550 (1966) (recognizing three concentric geographic markets); *US Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d 43, 64-67 (2d Cir. 2019) (plaintiff adequately alleged submarket limited to defendant's services); Dep't of Justice & Fed. Trade Comm'n, *Merger Guidelines* § 4.3 n.77 (2023) ("Multiple overlapping markets can be appropriately defined relevant markets.").

Because market definition is a tool for understanding competitive dynamics, the relevant market can change when the challenged conduct changes, even if the same products are involved. *See, e.g.*, *United States v. Phillipsburg Nat'l Bank & Tr. Co.*, 399 U.S. 350, 360 (1970) (submarkets that "would be clearly relevant" to "merger between a

commercial bank and another type of financial institution" were no basis for ignoring "commercial banking" market in merger between two commercial banks).

Accordingly, even though a broader market in which both Apple and Google app stores competed was relevant in *Epic v. Apple*, there is nothing contradictory about limiting the relevant market in *Epic v. Google*, a case involving different challenged conduct, to the distribution of apps sold on Android phones.[2]

---

[2] Google also appears to misstate the law on out-of-market benefits. Mot. 14. As far as we are aware, no reviewing court has previously held that a jury *must be* instructed that it can consider benefits to competition outside the relevant market, as Google's proffered instruction stated. Dkt. 554 at 130. *Sullivan v. NFL*, 34 F.3d 1091, 1113 (1st Cir. 1994), cited Mot. 14, held only that the jury may consider out-of-market justifications to the extent they "ultimately have a beneficial impact on competition in the relevant market itself."

15

# CONCLUSION

The Court should reject Google's misstatements of law on antitrust remedies and market definition.

Respectfully submitted,

/s/ Patrick M. Kuhlmann

ANISHA S. DASGUPTA
GENERAL COUNSEL
FEDERAL TRADE COMMISSION
600 Pennsylvania Ave., N.W.
Washington, DC 20580
(202) 326-2115
adasgupta@ftc.gov

JONATHAN S. KANTER
  *Assistant Attorney General*
DOHA G. MEKKI
  *Principal Deputy Assistant*
  *Attorney General*
JOHN W. ELIAS
  *Deputy Assistant Attorney*
  *General*
DAVID G.B. LAWRENCE
  *Policy Director*
DANIEL E. HAAR
NICKOLAI G. LEVIN
PATRICK M. KUHLMANN
  *Attorneys*
U.S. DEPARTMENT OF JUSTICE
ANTITRUST DIVISION
950 Pennsylvania Ave., N.W.
#3224
Washington, D.C. 20530-0001
(202) 305-4639
patrick.kuhlmann@usdoj.gov

October 25, 2024

16

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the word limitations of Federal Rules of Appellate Procedure 27(d)(1)(D) & 29(a)(5) and Circuit Rule 32-3, to the extent they apply, for documents using proportionally spaced typeface because it contains 2,799 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedures 32(f).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface with 14-point New Century Schoolbook font.

October 25, 2024                         s/ Patrick M. Kuhlmann
                                         *Attorney for the*
                                         *United States of America*

## CERTIFICATE OF SERVICE

I, Patrick M. Kuhlmann, hereby certify that on October 25, 2024, I electronically filed the foregoing Brief of the United States of America and the Federal Trade Commission as Amici Curiae in Support of Neither Party on Google's Emergency Motion for Partial Stay with the Clerk of the Court of the United States Court of Appeals for the Ninth Circuit by using the ACMS electronic filing system.

I certify that all participants in this case are registered ACMS users and that service will be accomplished by the ACMS system.

October 25, 2024     <u>s/ Patrick M. Kuhlmann </u>
*Attorney for the*
*United States of America*